IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CAMDEN COUNTY HISTORICAL SOCIETY,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION, et al.,<br><br>    Defendants. | Civil No. 17-5270 (RMB/AMD)<br><br>**OPINION** |

APPEARANCES:

POSTERNOCK APELL, P.C.
By: Matthew R. Litt, Esq.
400 N. Church Street, Suite 250
Moorestown, New Jersey 08057
    Counsel for Plaintiff Camden County Historical Society

OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
By: Brad M. Reiter, Esq.
    Fredric R. Cohen, Esq.
    Michael R. Sarno, Esq.
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 114
Trenton, New Jersey 08625
    Counsel for Defendants the New Jersey Department of
    Transportation, Richard T. Hammer, and David C. Mudge

OFFICE OF THE UNITED STATES ATTORNEY, DISTRICT OF NEW JERSEY
By: Elizabeth A. Pascal, Esq.
401 Market Street, P.O. Box 2098
Camden, New Jersey 08101
    Counsel for U.S. Department of Transportation;
    Secretary of the U.S. Department of Transportation,
    Elaine L. Chao; the Federal Highway Administration;
    and Former Acting Director of the Federal Highway
    Administration, Walter Waidelich, Jr.

**BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff, the Camden County Historical Society, considers the Harrison House "a national, regional, and local historic treasure." (Amend. Compl. ¶ 1)[1] The State of New Jersey demolished it in the early morning hours of March 3, 2017 to make room for "a federally funded highway reconstruction project." (Id.) The Historical Society had sought emergent relief before the State Court to prevent the destruction of such a treasure, but the Historical Society alleges that the State ignored its application and instead, "initiated a furtive and expedited demolition" of the house. (Id. ¶ 20) While the Historical Society has asserted many claims under federal and state law[2], this Opinion addresses one discrete issue raised in Defendants' Motions to Dismiss: Does the National Historic Preservation Act, 54 U.S.C. § 306108 ("NHPA"), create a private right of action? Applying the analytical framework established

---

[1] The Amended Complaint alleges that the earliest portions of the house "were likely constructed around 1740," and featured, among other things, "unique pattern brick architecture." (Amend. Compl. ¶ 2)

[2] Those claims are: (1) violation of the National Historic Preservation Act, 54 U.S.C. § 306108; (2) violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a); (3) fraudulent concealment of evidence; (4) "conspiracy to commit tort"; and (5) negligent spoliation of evidence. The Court exercises subject matter jurisdiction over this suit subject to the New Jersey State Defendants' claim to sovereign immunity under the 11th Amendment to the U.S. Constitution, which the Court does not rule upon at this time.
2

by the United States Supreme Court in Alexander v. Sandoval, 532 U.S. 275 (2001), which precedent the Third Circuit followed in Wisniewski v. Rodale, Inc., 510 F.3d 294 (3d Cir. 2007) and McGovern v. City of Philadelphia, 554 F.3d 114 (3d Cir. 2009), among other cases, the Court holds the NHPA does not create a private right of action. Accordingly, Defendants' Motion to Dismiss Count 1 of the Amended Complaint will be granted.[3]

**I.**

As alleged in the Amended Complaint, "[i]n or about 2001, Defendants [New Jersey Department of Transportation] and the Federal Highway Administration ("FHWA") announced they were preparing to undertake . . . a major reconstruction of the intersections of federal highway 295 and State highway 42 located in Bellmawr, New Jersey." (Amend. Compl. ¶ 74) "The geographic area affected by the Construction Project encompassed the Harrison House." (Id. ¶ 75)

In December 2003, historians Elizabeth Amisson and Paul Schopp allegedly concluded that the Harrison House was eligible for listing in the National Register of Historic Places. (Amend. Compl. ¶ 79) The Amended Complaint alleges that in May

---

[3] As discussed at oral argument on the motions, the Court reserves decision on the remainder of the issues raised by the motions until supplemental briefing has been completed, except that, consistent with the Historical Society's concession at oral argument, Count 4 of the Amended Complaint will be dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1).

2005, those same historians "suddenly concluded" that the features that had originally made the Harrison House eligible for the National Register "had been so obscured or removed that the Harrison House was incapable of interpreting its history and [was] now ineligible." (Amend. Compl. ¶ 88) Specifically, the Amended Complaint alleges that

> the survey process and the independence of the historians was [sic] compromised by misinterpretations of the building's architecture by the NJDOT cultural resources assessment project manager, divergences between the NJDOT project manager and the independent cultural resource consultants, and contrived analyses. Defendants' inaccuracies would have been identified and corrected had the process followed the regulations of the [NHPA]. Instead, Defendants hid and obscured their intentions by neglecting their obligation to notify the required consulting parties of their plans to demolish Harrison House.

(Id. ¶¶ 89-90) This alleged "bad faith section 106 'review'" (Id., Section Heading, p. 17) is the basis of the Historical Society's NHPA claim. (See Id. ¶ 174, "The Federal Highway Administration and/or United States Department of Transportation and/or New Jersey Department of Transportation violated their obligations under section 106 by failing to exercise good faith in concluding that the Harrison House was ineligible for inclusion on the National Register.").[4]

---

[4] See generally, Friends of the Atglen-Susquehanna Trail, Inc. v. Surface Transp. Bd., 252 F.3d 246, 252 (3d Cir. 2001) (describing § 106 as "stop, look, and listen" provision requiring an agency to acquire information before acting).

**II.**

On a Rule 12(b)(6) motion, the Court must decide whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating plausibility, the Court "disregard[s] rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Hassen v. Gov't of V.I., 861 F.3d 108, 114–15 (3d Cir. 2017) (internal citations and quotations omitted).

**III.**

**A.**

Before this Court reaches its analysis concerning an NHPA private right of action, it must answer a threshold question: Do principles of *stare decisis* and binding precedent allow this Court to reach the NHPA private right of action issue in light of the Third Circuit's decision in Boarhead Corp. v. Erickson, 923 F.2d 1011 (3d Cir. 1991)?

In Boarhead, the Third Circuit, relying upon the attorney fee shifting provision of the NHPA, concluded that "we agree

with the arguments advanced by Boarhead and *amici* that Congress must have intended to establish a private right of action to interested parties, such as Boarhead" under the NHPA. 923 F.2d 1011, 1017 (3d Cir. 1991) (citing the holding of Vieux Carre Prop. Owners, Residents & Assocs. v. Brown, 875 F.2d 453 (5th Cir. 1989), "that a private right of action existed under the Preservation Act against a federal agency."[5]). Neither the Supreme Court, nor the Third Circuit, has overruled Boarhead, and so, it is therefore the law of this Circuit that a private right of action exists under the NHPA. This Court well recognizes that as the lowest court in the vertical hierarchy of federal courts, it is powerless to overrule Boarhead. However, the fair question remains whether, under principles of vertical *stare decisis*[6], this Court is bound to follow Boarhead in light

---

[5] But see, Friends of St. Frances Xavier Cabrini Church v. FEMA, 658 F.3d 460, 466 n.2 (5th Cir. 2011) ("we note that [Sandoval] casts serious doubt on the continued viability of the private right of action under the NHPA.").

[6] Vertical *stare decisis* may be best defined thusly: "[b]inding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit." In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (per Ginsburg, J.), *aff'd sub nom.* by Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989); see also, Evan H. Caminker, *Why Must Inferior Courts Obey Superior Court Precedents?*, 46 Stan. L. Rev. 817, 824 (1994) ("A court must follow the precedents established by the court(s) directly above it. District courts must follow both Supreme Court decisions and those issued by whichever court of appeals has revisory jurisdiction over its decisions, and courts of appeals must heed Supreme Court decisions."). A lower court is "bound to follow both the

of the subsequent decision by the Supreme Court in Sandoval, and subsequent Third Circuit decisions applying Sandoval.

For the reasons illustrated *infra*, the Court agrees with Defendants' argument that it is not possible to follow faithfully, and apply properly, the mode of analysis established by Sandoval while simultaneously adhering to the holding of Boarhead—a decision that was issued ten years before Sandoval.[7] Indeed, as Defendants correctly point out, subsequent to Sandoval, the Third Circuit, in Wisniewski and McGovern as well as other decisions, applied Sandoval's mode of analysis to hold in some cases that Congress had not created a private right of action because there was no "rights-creating language" in the statutes. See *infra* p. 10-11 and n.10. Accordingly, the Court

---

reasoning and result of a case, and not simply to the result alone." Planned Parenthood of Se. Pa. v. Casey, 947 F.2d 682, 692 (3d Cir. 1991), *aff'd in part, rev'd in part* by 505 U.S. 833 (1992); see also, United States v. Martinez-Cruz, 736 F.3d 999, 1006 (D.C. Cir. 2013) ("As a lower court in a system of absolute vertical stare decisis headed by one Supreme Court, it is essential that we follow both the words and the music of Supreme Court opinions.") (Kavanaugh, J., dissenting).

[7] The Historical Society's assertion to the contrary-- that "Sandoval did not change the law as it existed when Boarhead was decided in 1991, it reinforced the Supreme Court's decision in Cort v. Ash, 422 U.S. 66 (1975) decades earlier" (Opposition Brief, Dkt # 61, p. 14)-- appears to be incorrect. See Wisniewski, 510 F.3d at 299, 300 ("Although Cort has never been formally overruled, subsequent decisions have altered it virtually beyond recognition. . .. The Supreme Court's decision in [Sandoval] strongly suggests that the Court has abandoned the Cort v. Ash test. . .. Although the Sandoval Court did not expressly reject the Cort v. Ash factors, it did not use them at all to guide its inquiry.")

7

concludes for the reasons explained below that, in this rare circumstance where Boarhead cannot be reconciled with Sandoval and other binding precedent, this Court by such subsequent rulings, is relieved of its obligation to follow Boarhead's holding concerning the existence of a private right of action under the NHPA. See Bryan A. Garner, et al., *The Law of Judicial Precedent*, 491 (Bryan A. Garner ed., 2016) ("A federal district court . . . must follow decisions of the court of appeals in the same circuit in preference to the decisions of all other courts, state or national, *unless* there is a *contrary* decision by the U.S. Supreme Court.") (emphasis added)[8]; cf. U.S. Airways, Inc. v. McCutchen, 663 F.3d 671, 678 (3d Cir. 2011) ("While we recognize that the District Court may have considered itself bound by [previous Third Circuit precedent], each [case] came before the Supreme Court's decisions in *Knudson* and *Sereboff* which . . . undermined the reasoning and holdings of our prior decisions. . . . These cases are therefore inapposite in light of the Supreme Court's intervening

---

[8] See also, Briley v. City of Trenton, 164 F.R.D. 26, 29 (D.N.J. 1995) (Wolfson, M.J.) ("'Absent a Supreme Court decision to the contrary, district courts are compelled to follow mandates of appellate courts.'") (quoting Litman v. Massachusetts Mut. Life Ins. Co., 825 F.2d 1506, 1508 (11th Cir. 1987)).

8

decisions."). Accordingly, the Court now turns to the merits of the NHPA issue.[9]

**B.**

*Sandoval* emphasized the principle that "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." 532 U.S. at 286. Thus, to determine whether a statute creates a private right of action, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id. In *Sandoval*, the Court examined "the text and structure of Title VI" to reach the conclusion that Congress did not "inten[d] to create a freestanding private right of action to enforce regulations promulgated under § 106 [of the Act]." Id. at 288, 293.

In the almost 20 years since *Sandoval*, the Third Circuit has applied the two step "*Sandoval* test,"-- *i.e.*, "(1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy?" *Wisniewski*, 510 F.3d at 301-- to various statutes.

In *Wisniewski*, for example, the Third Circuit applied the *Sandoval* test to hold that § 3009 of the Postal Reorganization

---

[9] The Court need not, and does not, express any view on any other issues addressed by *Boarhead*.

9

Act "provides no implied right of action."  510 F.3d at 301.
First, considering "whether the statute contained 'rights-creating' language that focuses on the 'individual protected' rather than 'the person regulated,'" Wisniewski, 510 F.3d at 301-02, the Court observed there was no obvious rights-creating language; rather, "Congress worded [the relevant provisions of the statute] as prohibitions on the person regulated rather than entitlements for the person protected."  Id. at 302.  Second, the Court found no congressional intent to create a private remedy in either the text or structure of the Act, nor in the legislative history.  Id. at 304-08.

Similarly, in McGovern, the Third Circuit applied the Sandoval test to 42 U.S.C. § 1981, holding that there was no private right of action under that statute.  554 F.3d at 116, 121.  In McGovern, while the Third Circuit acknowledged that § 1981 does speak generically of "rights," the Court explained that "[t]he mere mention of 'rights' does not, without more, establish a private right of action."  554 F.3d at 119.  The Court further explained that neither the text, nor the legislative history, provided a private remedy to enforce the "rights" protected by § 1981.  Id. at 120-21.

Most recently in Bakos v. Am. Airlines, Inc., the Third Circuit applied the "two-fold" Sandoval test to hold that the McCaskill-Bond Amendment does create a private right of action.

748 F. App'x 468, 473 (3d Cir. 2018). In that case the Court found that the statute did contain "rights-creating" language, and did provide a private remedy, observing that "there is no agency tasked with enforcement, which suggests private plaintiffs may sue to enforce McCaskill-Bond's requirements." Id. at 474.[10]

Thus, in examining the NHPA, just as the Third Circuit did in cases that followed Sandoval, this Court must apply the Sandoval test. First, the Court must look for rights-creating language in the text and structure of the statute. Second, the Court must consider the statute and its legislative history (to the extent relevant and available) in a search for a congressionally created private remedy.[11] The Court agrees with Defendants that the NHPA fails both prongs of the Sandoval test.

The relevant section of the statute states,

> [t]he head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having

---

[10] See also, Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 677 F.3d 178, 186–87 (3d Cir. 2012) (applying the Sandoval test and holding that there is no private right of action under Section 26(f) of the Investment Company Act); In re Joubert, 411 F.3d 452, 453 (3d Cir. 2005) (applying Sandoval to hold that a private remedy may not be implied under 11 U.S.C. § 105(a)).

[11] Boarhead did not consider these questions. Rather, based solely on the existence of the NHPA attorneys fees provision, Boarhead inferred that Congress "must have intended to establish a private right of action to interested parties." 923 F.2d at 1017.

11

> authority to license any undertaking, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property. The head of the Federal agency shall afford the Council a reasonable opportunity to comment with regard to the undertaking.

54 U.S.C. § 306108.

This provision contains no mention of rights at all. Thus, this case is clearer than McGovern, where at least the statute did speak generally of rights, yet the Court of Appeals nonetheless held that not private right of action existed. Additionally, as in Wisniewski, the statute focuses on the person regulated (*i.e.*, "the Federal agency") rather than entitlements for the person protected, and unlike the statute in Bakos, the statute at issue here does task a federal agency with enforcement.

The Historical Society points to 36 C.F.R. § 800.29(c)(5)-- which provides that "organizations" such as the Historical Society "*may* participate [in the § 106 process] as consulting parties due to the nature of their legal or economic relation to the undertaking or affected properties, or their concern with the undertaking's effects on historic properties" (emphasis added)-- as evidence of an intent to provide a private right. This argument fails for two independent reasons.

First, the regulation speaks in permissive, not mandatory, terms which is at least somewhat inconsistent with an intent to

create a legal entitlement. See Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh, 382 F.3d 412, 419-20 (3d Cir. 2004) ("Personal rights are those *intentionally and unambiguously* conferred through rights-creating language.") (emphasis added; internal citation and quotations omitted). Second, and more to the point, Sandoval clearly states that Congress must create the asserted right in a statute; an executive agency cannot do so in a regulation. 532 U.S. at 291 ("it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."). Thus, the Historical Society's reliance on 36 C.F.R. § 800.29(c)(5) is misplaced. For these reasons, the Court concludes that the NHPA does not create a personal, privately enforceable right.

Next, as to the private remedy inquiry, the Historical Society points to no private remedy provision in the NHPA.[12]

---

[12] The NHPA's attorneys fees provision is not tantamount to a private remedy provision. See San Carlos Apache Tribe v. United States, 417 F.3d 1091, 1099 (9th Cir. 2005) ("At best, the absence of any private right of action language in § 106 and the presence of the fee provision render the statute ambiguous on the cause of action point. Without explicit language, such an ambiguity can hardly be converted into an implied right of action."); Friends of Hamilton Grange v. Salazar, 2009 WL 650262 at *21 (S.D.N.Y. Mar. 12, 2009) ("the presence of a fee award provision is not dispositive of the issue of a private right of action"); Sisseton-Wahpeton Oyate v. U.S. Dep't of State, 659 F. Supp. 2d 1071, 1080 (D.S.D. 2009) (following San Carlos Apache Tribe); Nat'l Tr. for Historic Pres. v. Blanck,

13

Rather, it argues that "[i]f the NHPA is not held to have a right of private enforcement, then the NHPA is left with no enforcement provision at all." (Opposition Brief, Dkt # 61, p. 14) This argument is incorrect. As Defendants observe, review of agency action is available under the Administrative Procedure Act, 5 U.S.C. § 706(2).[13] Indeed, the Historical Society has asserted an APA claim in this case. Moreover, the absence of a

---

938 F. Supp. 908, 915 (D.D.C. 1996), aff'd, 203 F.3d 53 (D.C. Cir. 1999) ("neither the language nor the legislative history of the attorneys' fees provision of the NHPA clearly indicates an intent on the part of Congress to create a private right of action.").

[13] See, e.g., Friends of the Atglen-Susquehanna Trail, Inc. v. Surface Transp. Bd., 252 F.3d 246, 262 (3d Cir. 2001) ("We now proceed to the merits of this petition, whether the STB erred in carrying out its statutory obligations under § 106. Our review is governed by the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)."); Soc'y Hill Towers Owners' Assn v. Rendell, 210 F.3d 168, 178 (3d Cir. 2000) ("In their claim under the APA, the Residents contend that . . . the City failed to provide for meaningful public participation in the UDAG application review process, failed to consider the cumulative impacts of proposed development in the Penn's Landing area, failed to consider appropriate alternatives, and failed to properly weigh the public controversy surrounding the project in deciding whether an environmental impact statement was required."); see also, San Carlos Apache Tribe, 417 F.3d at 1096 ("An aggrieved party can sue under the APA to force compliance with § 106 without having a private right of action under the statute."); see generally, NAACP v. Sec'y of HUD, 817 F.2d 149, 152 (1st Cir. 1987) ("it is difficult to understand why a court would ever hold that Congress, in enacting a statute that creates federal obligations, has implicitly created a private right of action against the federal government, for there is hardly ever any need for Congress to do so. That is because federal action is nearly always reviewable [under the APA] for conformity with statutory obligations without any such private right of action.") (per Stephen J. Breyer, Circuit Judge).

remedy provision cannot be an invitation for the courts to create such a remedy, as <u>Sandoval</u> teaches. 532 U.S. at 286-87 ("Statutory intent . . . is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.") (internal citations and quotations omitted); see also, <u>Three Rivers Ctr.</u>, 382 F.3d at 420 ("It is often the case that only the executive can enforce a federal statute. Some statutes create rights in individuals that are only enforceable by agencies, or not enforceable at all.") (internal citations omitted). For these reasons, the Court concludes that the NHPA does not create a private remedy, and therefore the Court further holds that the NHPA does not create a private right of action.

Lastly, in further support of this conclusion, the Court observes that persuasive authority from other jurisdictions either holds or strongly suggests that no NHPA private right of action exists post-<u>Sandoval</u>. See <u>Karst Envtl. Educ. & Prot., Inc. v. EPA</u>, 475 F.3d 1291, 1295 (D.C. Cir. 2007) (no private right of action under NHPA); <u>San Carlos Apache Tribe</u>, 417 F.3d at 1099 (no private right of action under NHPA); see also, <u>Narragansett Indian Tribe by & through Narragansett Indian Tribal Historic Pres. Office v. R.I. Dep't of Transp.</u>, 903 F.3d 26, 29-30 (1st Cir. 2018) ("we have previously assumed without

deciding that the NHPA creates some type of private right of action. Such an assumption subsequently became more tenuous in the wake of [Sandoval].”); Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Transp., 843 F.3d 886, 901 (10th Cir. 2016) (noting in *dicta* that plaintiffs' claims arose under the APA because the NHPA provides no private right of action); Friends of St. Francis Xavier Cabrini Church, 658 F.3d at 466 n.2 ("[T]he Supreme Court's recent jurisprudence casts serious doubt on the continued viability of the private right of action under the NHPA.").

## IV.

For the above-stated reasons, the Court holds that the NHPA does not create a private right of action. Accordingly, Defendants' Motion to Dismiss Count 1 of the Amended Complaint will be granted. An appropriate Order accompanies this Opinion.


Dated: March 1, 2019            __s/ Renée Marie Bumb____
                                                 Renée Marie Bumb, U.S.D.J.